Noyes vs. The State.

## Noyes vs. The State.

Costs: Jurisdiction. *(1) Judgment in this court for costs against state in criminal action, void for want of jurisdiction. Such a judgment in supreme court of U. S. not a just claim against the state.*

Payments to State for Peddlers' Licenses, *under invalid act: (2) When recoverable. (3) Who may recover.*

1. Costs are the creature of the statute; and, under the statutes of this state, this court has *no jurisdiction* to render a judgment for costs against the state in a *criminal* action; and a judgment for costs against the state in the supreme court of the United States does not constitute a just claim against the state, within the meaning of the statute conferring on this court jurisdiction of actions against the state.

2. Payments to the state for peddlers' licenses under an invalid statute (ch. 72 of 1870), if made voluntarily, cannot be recovered; but if made under duress or menace equivalent to duress by public officers, they constitute a valid claim against the state.

3. *Prima facie*, the right of action to recover such payments is in the peddler who paid for the license, and not in the person who may have employed him; and the duress or menace which made the payment involuntary, should apparently be of the peddler himself.

Action brought in this court upon three several causes of action, the nature of which will sufficiently appear from the opinion. The attorney general demurred to each count of the complaint.

*J. P. C. Cottrill*, for plaintiff.

The cause was submitted for the state upon the brief of the *Attorney General*.

RYAN, C. J. I. The first count of the complaint is upon a judgment in this court, in favor of one Morrill, for costs in the supreme court of the United States, assigned to the plaintiff. A criminal prosecution was instituted by the state against Morrill, for violation of ch. 72 of 1870. He was convicted, and brought the case by writ of error to this court, where the conviction was affirmed. *Morrill v. The State*, 38 Wis., 428. He then took his writ of error to the supreme court of the United States, which reversed the judgment on a federal question. The judgment of reversal awarded costs against the state; and the judgment entered in this court, on filing the mandate of that court, also awarded the costs of the federal supreme court against the state.

Whether the judgment for costs in the federal supreme court went by inadvertence or upon consideration, it is impossible here to understand. That court holds that costs cannot be awarded against the United States. *The Antelope*, 12 Wheaton, 546; *U. S. v. Boyd*, 5 Howard, 29. These were both civil actions. The rule would of course be more imperative in criminal cases prosecuted by the United States in their sovereign capacity.

At the common law, costs were unknown. Costs are altogether the creature of statute. Speaking of the statute of Glocester, 6 Edw. I, Sir Edward Coke says: "Before this statute, at the common law, no man recovered costs of sute, either in plea real, personall, or mixt; by this it may be collected that justice was good cheap of auncient times, for in

king Alfred's time there were no writs of grace, but all writs remedialls were graunted freely." 2 Inst., 288. And no known statute gave costs against the crown.

In this state, therefore, costs are regulated exclusively by statute. As a rule, costs are given to the prevailing party in civil actions. And the statutes giving them might include the state, when it sues or permits itself to be sued in civil actions. There is a broad distinction between the *status* of a state instituting a prosecution in its sovereign capacity, to assert its sovereign rights, to enforce its public laws, or to protect its citizens, and the *status* of a state suing to enforce mere rights of property, as a private person might do in like case. *Penn. v. Wheeling Bridge Co.*, 13 Howard, 518. And however it may be when the state is a party to a civil action, to represent its rights of property, no statute authorizes the recovery of costs against the state in criminal prosecutions, upon judgment of acquittal or judgment of reversal in this court. No costs are recoverable in criminal prosecutions, even against defendants, except by express statute. *Faust v. The State*, 45 Wis., 273.

On what ground of authority the supreme court of the United States assumed to render judgment for costs against the state in its sovereign capacity, in the case of Morrill, it is difficult to conjecture. The judgment may not improbably have gone upon mere misprision of the clerk. Be that as it may, it is very certain that no statute of this state gives any authority to this court to render judgment for costs against the state in a criminal prosecution; and that this court has no jurisdiction to render such a judgment, even were it so ordered by the mandate of the supreme court of the United States. The jurisdiction of this court must come by the constitution and laws of the state. The federal supreme court cannot confer it; though it may, in cases involving federal questions, control its exercise.

But the judgment in this court, for the costs of the federal

court, is not within the mandate of that court. After reciting the judgment for costs in that court, the mandate sends the cause back to this court, "with instructions to enter a judgment reversing the judgment of the circuit court, and directing that court to discharge the defendant from imprisonment, and to suffer him to depart without day," and "that such execution and further proceedings may be had in the said cause, in conformity to the judgment and decree of this court above stated, as, according to right and justice and the constitution and laws of the United States, ought to be had therein." There is no mandate to render judgment here for costs. The execution and further proceedings ordered were fulfilled, upon the reversal of the judgment of the circuit court and the direction to that court to discharge the defendant.

Upon whatever principle the federal court adjudged costs against the state, it is quite manifest, on the face of its mandate, that it did not assume to direct this court to render such a judgment. And it is not a little curious, that, while the judgment entered in this court gives the costs of the federal court, it does not assume to give the costs of this court or of the circuit court; thus recognizing that the state is not liable to costs in such a prosecution.

The judgment for costs is a blunder; though a blunder too grave to be lightly treated. The court then consisted of three members only, and the chief justice was necessarily absent. The mind of neither of the justices sitting appears to have gone to the judgment. The counsel of Morrill gave the clerk a draft of the judgment, as it is entered; and the clerk appears to have entered it by the consideration and judgment of the counsel, not of the court. The court appears to have assumed that the proper judgment would be entered. But it must share the censure, as no judgment in such a case should be permitted to pass without examination by the court.

So much of the judgment of this court as awards costs against the state is void. It is unnecessary to express any

opinion on the effect of the judgment for costs of the federal supreme court. It is sufficient to hold that it is not a just claim against the state, within the meaning of the statute conferring jurisdiction on this court of actions against the state.

II.   In the case of *Morrill v. The State*, the federal supreme court held certain provisions of ch. 72 of 1870 to be in conflict with the constitution of the United States, and void. The second count of the complaint seeks to recover several license fees exacted and paid under such void provisions, by persons employed by the plaintiff's firm as peddlers, to sell goods of the firm.   So far as such payments may have been voluntary, they cannot be recovered back.   *Van Buren v. Downing*, 41 Wis., 122.   But so far as they were made under duress or menace equivalent to duress by public officers, they constitute a valid claim against the state.   *Matheson v. Mazomanie*, 20 Wis., 101; *Kellogg v. Supervisors*, 42 Wis., 97; *Allen v. Burlington*, 45 Vt., 202; *Atwell v. Zeluff*, 26 Mich., 118; *Bank v. Mayor, etc.*, 43 N. Y., 184; *Union Bank v. Mayor, etc.*, 51 N. Y., 638, reversing *S. C.*, 51 Barbour, 159.

*Prima facie*, the right of action to recover back each license fee paid under duress or menace would be in the peddler who paid it.   Although the peddlers from whom the license fees set forth in the count were exacted, may have been employed by the plaintiff's firm, yet in their relations to the state they were mere peddlers, each in his individual capacity and right. The license fee of each, by whomsoëver actually paid, was necessarily paid in the name and right of the peddler who took the license.   And the duress or menace which could make the payment involuntary, should apparently be of the peddler himself.   It is not apparent how duress or menace of the plaintiff's firm could affect the payment by the peddler.

An assignment by the plaintiff's partner is averred; but no assignments from the peddlers.   The mere fact that the peddlers were employed by the plaintiff's firm as averred, does

not appear to vest the right of action in the plaintiff. And indeed there is such confusion and conflict of averment in the count, that it appears impossible to determine by whom the payments to the state were actually made, the peddlers or the plaintiff's firm; or upon whom the duress or menace operated, the plaintiff's firm or the peddlers. The uncertainty, or perhaps more properly the duplicity, of the count in this respect, is so great as to leave it without any certain and definite cause of action.

It is quite possible, however, that an amendment of this count may disclose a valid claim against the state. Leave will therefore be given to amend it.

III. What is said of the first count is conclusive of the third. The first count goes upon the right to recover taxable costs of a criminal prosecution which failed. The third count goes for counsel fees and other incidental expenses incurred in the defense of the criminal prosecution. The plaintiff has just the same right to recover for these, as any person prosecuted for any crime and acquitted. If there is no right in such cases to recover taxable costs, *a fortiori* there is none to recover counsel fees and other expenses. It is the solemn duty of the court, as it was of the legislature, to protect the state against such an extravagant claim.

*By the Court.* — The several demurrers of the attorney-general to the three causes of action in the complaint, are sustained. But leave is given to the plaintiff to amend the second cause of action.